IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EUGENIO S. MATHIS,
*Personal Representative of the Estate of*
*Dominick Milia, deceased*,

      Plaintiff,

v.                                                                               No. 1:25-cv-00256-KG-JFR

CORE CIVIC OF TENNESSEE, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on two motions to dismiss Plaintiff's amended complaint for failure to state a claim filed by Defendants CoreCivic, Inc. and Dr. Ginger Vaughn under Federal Rule of Civil Procedure 12(b)(6). Docs. 13, 27. Both motions are granted, and the amended complaint is dismissed in its entirety without prejudice.

*I.*     *Background*

The Court draws this case's background from the allegations in Plaintiff's amended complaint, which the Court must accept as true at the motion to dismiss stage. *E.g.*, *WildEarth Guardians v. U.S. Forest Serv.*, 2025 WL 2430383, at *1 n.1 (D.N.M.).

Dominick Milia died of infective endocarditis while he was a federal pretrial detainee at Cibola County Correctional Center ("CCCC"), and Plaintiffs allege that Defendants are at fault for Mr. Milia's death. *United States v. Milia*, No. 1:18-cr-02844, Doc. 18 (D.N.M.); *see United States v. Ahidley*, 486 F.3d 1184, 1192 n.4 (10th Cir. 2007) (a court may take judicial notice of public dockets). CCCC (a nonparty to this action) is a privately operated prison, and Defendant CoreCivic is the "private for-profit prison corporation" that "operates" CCCC. Doc. 3 ¶ 26. Defendant Robert

1

Nilius was "Warden of CCCC" "at the time of Dominic[k] Milia's death," and Defendants William Snodgrass and Bullock were both correctional officers. *Id.* ¶¶ 8–10. Defendant Correctional Medical Associates, P.C. ("CMA") oversees CCCC's medical staff. *Id.* ¶ 6. CMA "employ[s] certain medical staff to provide direct care to detainees and to supervise CoreCivic medical staff in the provision of care to detainees." *Id.* Dr. Keith Ivens was CMA's "on-site physician" at CCCC from "January through March 2022." *Id.* ¶ 31.

Mr. Milia's health began to precipitously decline in early 2022. Doc. 3 ¶ 79. "[W]hile incarcerated at CCCC," Mr. Milia "had a history of intravenous drug use" and, as a result, was "especially susceptible to dangerous infections like endocarditis." *Id.* ¶ 78. On January 24, 2022, Mr. Milia "was seen by CCCC medical staff for severe pain and throbbing in his left foot." *Id.* ¶ 79. Mr. Milia's health declined, and after experiencing a "mini stroke," he suffered "another stroke" on February 6, 2022, exhibiting symptoms of his face "drooping, and he was unable to raise his arms in front of him." *Id.* ¶¶ 81, 83. Mr. Milia was "transferred via ambulance to Cibola General Hospital for emergency care" where Defendant Dr. Ginger Vaughn evaluated him. *Id.* ¶¶ 86, 87. Dr. Vaughn evaluated Mr. Milia and "released him back to the prison population" without "providing him proper care or taking steps to ensure that he received minimally adequate care." *Id.* ¶ 90. On February 27, 2022, "CCCC staff found [Mr. Milia] lying in his bed with pale skin, labored breathing, and a rapid heart rate, unable to communicate, open his eyes, follow instructions, or move his arms." *Id.* ¶ 102. Mr. Milia was "transported to the University of New Mexico for emergency medical care," *id.* ¶ 103, and died "on March 11, 2022, from complications of infective endocarditis," *Id.* ¶ 107.

Plaintiff, the personal representative of Mr. Milia's estate, sued CoreCivic, CMA, Cibola General Hospital, Inc., Dr. Ivens, Dr. Vaughn, CCCC Warden Robert Nilius, and Correctional

Officers William Snodgrass and Bullock in this Court in March 2025. Doc. 1. In the amended complaint, Plaintiff alleges that Defendants violated Mr. Milia's constitutional rights through claims filed under 42 U.S.C. § 1983. Doc. 3. Specifically, Plaintiff alleges that CoreCivic, Cibola General Hospital (and their agents, including CMA, Dr. Ivens, and Dr. Vaughn) violated the Constitution by failing to monitor Mr. Milia's medical conditions, provide him with proper medication, prevent his illegal possession of intravenous drugs, and refer him to specialty care. *Id.* Plaintiff also alleges a conspiracy to violate Mr. Milia's constitutional rights under 42 U.S.C. §§ 1985(3) and 1986. *Id.*

CoreCivic, on behalf of itself, CMA, Dr. Ivens, and William Snodgrass filed its motion to dismiss on May 5, 2025, Doc. 13, and Dr. Vaughn filed her partial motion to dismiss Counts 5 through 10 on June 13, 2025, Doc. 27. The remaining Defendants did not join because they were not properly served. Doc. 13 at 1. Defendants argue that dismissal is proper under Rule 12(b)(6) because Plaintiff's § 1983 claims fail to plausibly allege state action and Plaintiff's §§ 1985(3) and 1986 claims fail to articulate a protected class. Doc. 13, 27. Plaintiff opposed both motions, Docs. 25, 35, and Defendants replied, Docs. 33, 38.

II.     *Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that, if accepted as true, state plausible claims for relief that are plausible on their face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint satisfies this standard if it contains sufficient factual allegations for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When a complaint is dismissed pursuant to Rule 12(b)(6), courts generally permit plaintiffs to file an amended complaint. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994).

III.    *Analysis*

For the reasons below, the Court concludes that Plaintiff fails to plausibly allege (A) state action under § 1983 and (B) a protected class under §§ 1985(3) and 1986. The motions to dismiss are therefore granted.

  A. *Plaintiff fails to plausibly allege state action under § 1983*.

The Court, first, dismisses Plaintiff's § 1983 claims because Plaintiff fails to plausibly allege state action in the amended complaint. Dismissal is, however, without prejudice, and Plaintiff may file a second amended complaint addressing this deficiency.

Section 1983 creates a cause of action for federal constitutional violations against persons acting "under color of" state law. 42 U.S.C. § 1983; *see McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011). The statute requires state action—*i.e.*, that the deprivation of a plaintiff's rights "be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "State" refers to state governments—for example, the government of New Mexico—and "does not concern itself with federal action." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1187–88 (10th Cir. 2020) (citation omitted).

Under these principles, Plaintiff's § 1983 claims lack merit as the amended complaint is devoid of plausible allegations that any Defendant acted under color of the law of any state. Indeed, Plaintiff's allegations suggest that Defendants were federal actors. For example, Plaintiff alleges that "CoreCivic and CMA were at all relevant times acting under color of…federal law in operating CCCC and providing medical services." Doc. 3 ¶ 160. Plaintiff also alleges that Dr. Vaughn worked at Cibola General Hospital, a "domestic corporation that receives federal funding." *Id.* ¶¶ 7, 12. Public dockets likewise show that Mr. Milia was a federal pretrial detainee, and the amended complaint does not otherwise allege that he was a detainee of any state. *Id.* ¶ 4. This deficiency is

4

fatal to Plaintiff's § 1983 claims.

Plaintiff resists dismissal of his § 1983 claims, but his arguments are unpersuasive. First, citing *West v. Atkins*, 487 U.S. 42 (1988), Plaintiff argues that providing medical care to inmates is automatically state action. Doc. 25 at 6. *West*, however, involved a North Carolina physician working at a North Carolina prison hospital—not federal action of any kind—and is therefore inapposite. 487 U.S. at 43. Next, Plaintiff cites the § 1983 entity liability framework of *Monell v. Department of Social Services*, 436 U.S. 648 (1978). *Monell*, however, requires state action— it does not apply without "proof of a substantive constitutional violation by an individual state actor." *Martinez v. Valdez*, 125 F.Supp.3d 1190, 1216 (D. Colo. 2015). Plaintiff's § 1983 claims are therefore dismissed without prejudice.

  B. *Plaintiff fails to plausibly allege §§ 1985(3) and 1986 claims.*

The Court also dismisses Plaintiff's §§ 1985(3) and 1986 claims, as Plaintiff fails to plausibly allege the required protected class. This dismissal is also without prejudice.

Section 1985(3), originally passed as the Ku Klux Klan Act, states in relevant part that "if two or more persons in any State or territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...the party so injured or deprived may have an action for the recovery of damages." 42 U.S.C. § 1985(3). To bring a § 1985(3) claim, a plaintiff must plausibly allege a conspiracy to interfere with their rights because of racial or class-based animus, an act in furtherance of the conspiracy, and a resulting injury or deprivation. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). The plaintiff must be a "member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the [protected] class." *Yaklich v. Grand Cty.*, 2378 Fed. Appx

797, 802 (10th Cir. 2008); *see, e.g.*, *Nielson v. Soltis*, 1994 WL 589460, at *9 (dog trainers are not members of statutorily protected class).  Section 1986 liability is contingent on § 1985 liability.  *E.g.*, *Taylor v. Nichols*, 558 F.2d 561, 568 (10th Cir. 1977) ("There cannot be a valid claim under Section 1986 unless there is also a claim under Section 1985.").

Under these principles, Plaintiff's §§ 1985(3) and 1986 claims fail as well.  Plaintiff alleges the discrimination against Mr. Milia was motivated by animus against "incarcerated individuals with serious medical conditions and disabilities, particularly those with substance use disorders, chronic medical needs, and acute life-threatening conditions."  Doc. 3 ¶ 198.  Plaintiff, however, does not cite any authority that "incarcerated individuals" or those with "serious medical conditions" are part of a statutorily protected class under § 1985(3).  Plaintiff therefore fails to allege a plausible § 1985(3) claim, meaning Plaintiff's § 1986 claim fails as well.  Those claims are dismissed under Rule 12(b)(6) without prejudice.

III.    *Conclusion*

Defendants' Rule 12(b)(6) motions are granted, and Plaintiff's amended complaint is dismissed in its entirety without prejudice.  Plaintiff may file a second amended complaint within 21 days of this order.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document.  Electronically filed documents can be found on the Court's PACER public access system.